1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

9   TOYO TIRE AND RUBBER CO., LTD., et al.,        )
                                                  )
10              Plaintiffs,                        )       Case No. 2:13-cv-02062-GMN-NJK
                                                  )
11   vs.                                           )       **REPORT AND RECOMMENDATION**
                                                  )
12   TOYAMA TYRE CORP., LTD., et al.,              )       Docket No. 31
                                                  )       Motion for Final Judgment and
13              Defendants.                         )       Permanent Injunction by Default
                                                  )
14   _____)

15          Pending before the Court is Plaintiffs Toyo Tire and Rubber Co. Ltd., Toyo Tire U.S.A. Corp., and

16   Toyo Tire Holdings of Americas Inc.'s (collectively "Toyo") Motion for Final Judgment and Permanent

17   Injunction by Default.  Docket No. 31.  This matter was referred to the Court by Local Rule IB 1-4 and 28

18   U.S.C. § 636(b)(1)(B).  The Court finds this matter is properly resolved without oral argument.  *See* Local

19   Rule 78-2.  The Court has considered the motion, to which no response has been filed.  The Court

20   recommends that Plaintiffs' Motion for Final Judgment and Permanent Injunction by Default be

21   **GRANTED**.

22   **I.       BACKGROUND**

23          Toyo is a world-wide manufacturer and distributor of tires.  Docket No. 31, at 2.  Toyo's brand has

24   been featured in movies, television shows, sporting and entertainment events throughout the United States

25   and the world, and "has repeatedly been named #1 Overall Brand By North American Tire Dealers in Tire

26   Review Magazine's Annual Tire Brand Study."  *Id.*, at 3.  Toyo has made exclusive and continuous use of

27   the TOYO mark in connection with the tire industry internationally since at least as early as 1945, and in

28   the United States since at least as early as 1966.  *Id.*

1        According to Plaintiffs, Defendants Toyama Tyre Corp., LTD., a Japanese company, Toyama Tyre

2   Corp., LTD., a Chinese company, and Hong Kong Toyama Tyre Int'l, LTD., a Chinese company

3   (collectively "Defendants"), "have adopted marks, a company name, and domain names calculated to

4   confuse purchasers," in order to trade off Toyo's reputation as a preeminent tire manufacturer.  *Id*., at 8.

5   Plaintiffs allege that Defendants, "presumably a single Chinese [tire] manufacturer, have cloaked

6   themselves in the name and trade identities of Toyo to gain entrance into and credibility in the United States

7   and worldwide tire markets."  Docket No. 1, at 2.  In their motion, Plaintiffs reproduce photographs and

8   screenshots of Defendants' tires and advertising materials, in order to demonstrate that Defendants use a

9   "confusingly similar variation of the TOYO logo" on Defendants' products.  *Id*., at 8.  Plaintiffs

10  additionally provide photographs of Defendants marketing the alleged infringing products at the 2013

11  SEMA[1] tradeshow, in Las Vegas, Nevada, including photographs of Defendants' booth at the tradeshow.

12  *Id*., at 9.

13       On November 8, 2013, Plaintiffs filed a Complaint in this Court alleging violations of (1)

14  trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1); (2) false designation of origin and

15  unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); (3) trademark dilution under the Lanham

16  Act, 15 U.S.C. § 1125(c); (4) cybersquatting under the Anticybersquatting Consumer Protection Act

17  (ACPA), 15 U.S.C. § 1125(d); (5) common law trademark and trade name infringement; and (6) common

18  law unfair competition.  Docket No. 1.  Defendants were served on November 8, 2013, while attending the

19  SEMA Show tradeshow.  Docket Nos. 10, 11, 12.  *See also* Docket No. 31, at 11-12.

20       On December 2, 2013, the parties submitted a stipulation (Docket No. 15) - granted by the Court

21  that same day (Docket No. 17) - that extended the deadline for Defendants to respond to Plaintiffs'

22  Complaint and Motion for Preliminary Injunction.  Docket No. 5.[2]  Nonetheless, Defendants did not

---

[1]

    "The SEMA Show is the premier automotive specialty products trade event in the world ... SEMA Show 2013 drew more than 60,000 domestic and international buyers." http://www.semashow.com (last visited July 29, 2014).

[2]

    Plaintiffs also filed an Emergency Motion for Temporary Restraining Order (Docket No. 3), which was denied by the Court on November 8, 2013.  Docket No. 13.

respond to the Complaint or the motion for preliminary injunction. *See* Docket. On December 27, 2013, counsel for Defendants filed an emergency motion to withdraw as attorney, Docket No. 21, which was granted by the Court on December 30, 2014. Docket No. 22. Since a corporation cannot appear except through counsel, *id.*, at 2 (citations omitted), the Court ordered:

> Defendants ... shall have until January 30, 2014, to retain new counsel, who shall file a notice of appearance in accordance with the Local Rules of Practice. ... Failure to comply with this order may result in a recommendation to the District Judge for sanctions, including case-dispositive sanctions.

*Id*.

Despite the Court's Order of December 30, 2013, no notice of appearance has been filed on behalf of Defendants. *See* Docket. On January 31, 2014, the Court issued an Order for Defendants to:

> show cause in writing, no later than March 3, 2014, why their answers should not be stricken and default judgment entered against them for its failure to defend and failure to comply with the court's order that they retain counsel of record. ... Failure to timely comply with this order to show cause will result in the recommendation to the District Judge that the noncomplying defendants' answers be stricken and default judgment entered against them.

Docket No. 24, at 2.

Defendants did not respond to the Court's Order to Show Cause. *See* Docket. On March 11, 2014, the Court issued a Report and Recommendation that the Defendants' pleadings be stricken, and that the Clerk of the Court enter judgment accordingly. Docket No. 27, at 2. On March 31, 2014, Chief United States District Judge Gloria M. Navarro accepted and adopted the Report and Recommendation. Docket No. 28. In that Order, the Court ordered the Clerk of the Court to enter default as to all Defendants. *Id.*, at 1. On the same day, the clerk's office entered default as to all Defendants. Docket No. 29.

Plaintiffs filed the instant motion for default judgment on June 9, 2014. Docket No. 31. In their motion, Plaintiffs seek statutory damages in the amount of $100,000, as well as a permanent injunction prohibiting Defendants from engaging in further acts of trademark infringement, a permanent transfer of the domain name <www.toyamatyre.com> to Plaintiffs, and an order directing the web registrar to disable the <www.toyamatyre.com> domain. *Id.*, at 26.

//

//

3

1    **II.    DISCUSSION**

2         Obtaining a default judgment is a two-step process governed by the Federal Rules of Civil

3    Procedure. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). First, "[w]hen a party against whom a

4    judgment for affirmative relief is sought has failed to plead or otherwise defend ... the clerk must enter the

5    party's default." Fed. R. Civ. P. 55(a). Second, after the clerk enters default, a party must seek entry of

6    default judgment under Federal Rule of Civil Procedure 55(b).

7         **A.    Request for Default Judgment**

8         Upon entry of default, the court takes the factual allegations in the non-defaulting party's complaint

9    as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (*citation omitted*).

10   Nonetheless, although entry of default by the clerk is a prerequisite to an entry of default judgment, "a

11   plaintiff who obtains an entry of default is not entitled to default judgment as a matter of right." *Warner*

12   *Bros. Entm't Inc. v. Caridi*, 346 F. Supp.2d 1068, 1071 (C.D. Cal. 2004) (*citation omitted*). Instead,

13   whether a court will grant a default judgment lies within the discretion of the trial court. *Aldabe v. Aldabe*,

14   616 F.2d 1089, 1092 (9th Cir. 1980).

15        In the determination of whether to grant a default judgment, the trial court should consider the seven

16   factors articulated in *Eitel*, 782 F.2d at 1471-72. These factors are: (1) the possibility of prejudice to

17   plaintiff, (2) the merits of the claims, (3) the sufficiency of the complaint, (4) the amount of money at stake,

18   (5) the possibility of a dispute concerning material facts, (6) whether default was due to excusable neglect,

19   and (7) the policy favoring a decision on the merits. *Id*.; *see also Trs. of Elec. Workers Health and Welfare*

20   *Trust v. Campbell*, 2009 WL 3255169 (D. Nev. Oct. 7, 2009). In applying these *Eitel* factors, "the factual

21   allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes*

22   *v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977).

23        **1.    Prejudice**

24        The first *Eitel* factor weighs in favor of granting Plaintiffs' motion, because Plaintiffs have no other

25   recourse to recoup damages caused by Defendants and to prevent them from committing further acts of

26   infringement. *See Adobe Sys. Inc. v. Marmoletos*, 2009 WL 1034143, at *3 (N.D. Cal. Apr. 16, 2009).

27   Defendants have not answered or otherwise responded to the Complaint. If Plaintiffs' motion for default

28   //

4

judgment is not granted, Plaintiffs "will likely be without other recourse for recovery." *PepsiCo, Inc. v. Cal. Security Cans*, 238 F. Supp.2d 1172, 1177 (C.D. Cal. 2002).

### 2.    *Merits of Plaintiffs' Substantive Claims and Sufficiency of the Complaint*

The second and third *Eitel* factors favor a default judgment where the complaint sufficiently states a claim for relief under the "liberal pleading standards embodied in Rule 8" of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8; *Danning v. Lavine*, 572 F.2d 1386, 1389 (9th Cir. 1978).

Plaintiffs' Complaint states plausible claims for relief under Fed. R. Civ. P. 8, and Plaintiffs have provided evidence of the trademark registrations in question to support their Lanham Act and common law trademark and unfair competition claims.[3] Further, Plaintiffs' Complaint is well pleaded as it identifies Defendants, enumerates Plaintiffs' rights in their trademarks, describes the steps Defendants took to infringe upon Plaintiffs' trademarks, and sets forth causes of action for Defendants' conduct. *See* Docket No. 1; Fed. R. Civ. P. 8(a).

To establish a Lanham Act trademark infringement claim, Plaintiffs are required to show that Defendants used Plaintiffs' registered marks "in connection with the sale, offering for sale, distribution, or advertising of any goods or services." 15 U.S.C. § 1114(1)(a). Assuming, as the Court must, that Defendants' marks were similar to that of Plaintiffs, Docket No. 1, at 9-10, Plaintiffs have sufficiently alleged a trademark infringement claim against Defendants which has merits on its face. *Id.*, at 12-13.

Similarly, Plaintiffs sufficiently allege a false designation of origin claim under the Lanham Act. *Id.*, at 13. Section 1125(a)(1)(A) of the Lanham Act requires that a plaintiff demonstrate that the defendant used a mark in a "false or misleading" fashion that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person" with respect to the plaintiff's mark. Here, Defendants' use of similar marks to those which Plaintiffs have registered is likely to cause confusion as to the source or origin of Defendants' products and/or their affiliation with Plaintiffs' products, confusion that is actionable as a false designation of origin claim. *See* Docket No. 1, at 9-11.

---

[3]

The same test for federal trademark infringement "applies to common law trademark infringement and unfair competition claims." *Herb Reed Enters., Inc. v. Bennett*, 2011 WL 2607079, at *2 ( D. Nev. June 30, 2011), *citing New West Corp. v. NYM Co.*, 595 F.2d 1194, 1201 (9th Cir. 1979).

Plaintiffs are also entitled to default judgment on their mark dilution claims under the Federal Trademark Dilution Act ("FTDA"), 15 U.S.C. § 1125(c). "Whereas trademark law targets interference with the source signaling function of trademarks, dilution protects owners from an appropriation of or free riding on the substantial investment that they have made in their marks." *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 903 (9th Cir. 2002) (internal quotations and *citation omitted*). Section 1125(c) protects "the owner of a famous mark ... against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark." Here, Plaintiffs satisfy their burden of alleging substantial investment, over time, in the good will of its TOYO mark. Docket No. 1, at 3-8. Plaintiffs' allegation that Defendants have made use of a similar mark on Defendants' tires and in their advertising materials suffices to state a plausible claim of trademark dilution under federal law. *See id.*, at 9-11.

### 3. Sum of Money at Stake

Under the fourth *Eitel* factor, the court considers "the amount of money at stake in relation to the seriousness of Defendants' conduct." *PepsiCo*, 238 F. Supp.2d at 1176. The sum of money sought is relatively large, over $100,000; however, the amount of money sought is authorized under the ACPA. *See* 15 U.S.C. § 1117(d) (a prevailing plaintiff may recover "an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name"). Because Plaintiffs demonstrate a statutory basis for their requested monetary relief, and given the extent of Defendants' infringement, the fourth *Eitel* factor favors Plaintiffs.

### 4. Possible Dispute

The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case. *PepsiCo*, 238 F. Supp.2d at 1177. Given (1) the sufficiency of the Complaint; (2) Plaintiffs' evidence of trademark registrations; (3) Plaintiffs' evidence of Defendants' infringement; and (4) Defendants' default, "no genuine dispute of material facts would preclude granting [Plaintiffs'] motion." *Id.*; *see also Geddes*, 559 F.2d at 560; Docket No. 1, at 3. The fifth *Eitel* factor therefore favors default judgment.

### 5. Excusable Neglect

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect. *Eitel*, 782 F.2d at 1472. Here, and despite the Court's Order, Defendants did not retain new counsel

following the withdrawal of their attorneys. *See* Docket No. 22, at 2. Morever, Defendants did not respond to the Court's subsequent order to show cause "why their answers should not be stricken and default judgment entered against them" for this failure to retain new counsel. Docket No. 24, at 2. Thus, applying the sixth factor, the Court cannot conclude that Defendants' default is due to excusable neglect. Defendants were properly served with the summons and the Complaint. Docket Nos. 10, 11, 12. Defendants' failure to respond or litigate this case cannot be attributable to excusable neglect. *United States v. High Country Broad. Co., Inc.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (holding that it was "perfectly appropriate" for the district court to enter default judgment against a corporation that failed to appear in the action through licensed counsel).

### 6.   *Decision on the Merits*

The final *Eitel* factor weighs against default judgment. "Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. The mere existence of Rule 55(b), however, "indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp.2d at 1177 (*citation omitted*). Moreover, Defendants' failure to answer or otherwise respond to the Complaint "makes a decision on the merits impractical, if not impossible." *Id*.

Having reviewed Plaintiffs' motion and Complaint, and having considered the *Eitel* factors as a whole, the Court concludes that the entry of default judgment is appropriate against Defendants. The Court now turns to the reasonableness of the damages and relief sought in the default judgment.

### B.   **Damages and Injunctive Relief**

### 1.   *Statutory Damages*

Plaintiffs seek damages in the amount of $100,000 pursuant to the ACPA. Docket No. 31, at 25-26; 15 U.S.C. § 1117(d). Courts may award prevailing plaintiffs statutory damages pursuant to the ACPA for cybersquatting. *Bellagio v. Denhammer*, 2001 U.S. Dist. LEXIS 24764, at *11-12 (D. Nev. July 10, 2001). In a case involving a violation of section 1125(d)(1), "the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just." 15 U.S.C. § 1117(d). Further, "the court has wide discretion in determining the

//

7

1  amount of statutory damages to be awarded, constrained only by the specified *maxima* and *minima*." *Harris*

2  *v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984).

3      Plaintiffs concede the difficulty in ascertaining the damages Plaintiffs have suffered due to

4  Defendants' infringement. *See* Docket No. 31, at 19 ("given Toyama's default, Toyo will likely never know

5  precisely how many ... infringing products Toyama has sold throughout the world").  Accordingly, and

6  rather than seek damages pursuant to its infringement claims, "Toyo seeks only statutory damages based

7  upon Defendants' cybersquatting violation of the ACPA." *Id*.  Plaintiffs request that the Court send a clear

8  message that misappropriating famous trademarks with the bad faith intent to profit will not be tolerated.

9  *Id*., at 20.  Further, Plaintiffs assert that awarding the maximum statutory amount pursuant to the ACPA

10  would deter Defendants from their ongoing, unlawful conduct, and would "compensate Plaintiffs for the

11  recovery of its marks and unjust enrichment to Defendants in using the TOYO marks." *Id*.  Given the

12  extent and nature of Defendants' infringement, the Court finds that the maximum statutory award to

13  effectuate deterrence is warranted here. The Court therefore finds that Plaintiffs' request for damages

14  pursuant to the ACPA in the amount of $100,000 is appropriate.

15              **2.   *Injunctive Relief***

16      Plaintiffs seek a permanent injunction prohibiting Defendants or their agents from engaging in

17  further acts of trademark infringement.  *Id.*, at 26.  Plaintiffs also request a permanent transfer of the

18  <www.toyamatyre.com> domain name to Toyo, and further request an order directing VeriSign, Inc., the

19  registrar for ".com" domain names, to disable the <www.toyamatyre.com> domain.  *Id*.  The ACPA

20  authorizes courts to transfer domain names to the owner of the mark at issue, and states that courts may also

21  "order the forfeiture or cancellation of the domain name."  15 U.S.C. § 1125(d)(1)(C).  Moreover,

22  "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no

23  adequate remedy at law for the injury caused by defendants' continuing infringement." *Century 21 Real*

24  *Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).  Based on evidence of Defendants'

25  infringement, the Court finds that Plaintiffs' request for a permanent injunction prohibiting further acts of

26  infringement, a permanent transfer of the domain name, and a cancellation of the domain name by the

27  registrar are appropriate remedies in this matter.

28  //

8

## RECOMMENDATION

Based on the foregoing reasons, **IT IS RECOMMENDED** that Plaintiffs' Motion for Final Judgment and Permanent Injunction by Default (Docket No. 31) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that Plaintiffs be awarded judgment against Defendants as follows:

1.      Statutory damages in the amount of $100,000.00;

2.      Post-judgment interest on the principal sum at the statutory judgment rate from the date of entry of the judgment until paid in full.

**IT IS FURTHER RECOMMENDED** that, pursuant to 15 U.S.C. § 1116, Defendants, as well as their respective officers, agents, servants, employees, confederates, attorneys, and all those in active concert or participation with them are hereby permanently enjoined from:

1.  Using any reproduction, counterfeit, copy, or colorable imitation of the TOYO Marks (as defined in the Complaint) in commerce including, without limitation: (a) by selling, offering for sale, distributing, promoting, or advertising any good or service in connection with such reproduction, counterfeit, copy, or colorable imitation of the TOYO Marks; or (b) by displaying any reproduction, counterfeit, copy, or colorable imitation of the TOYO Marks in the United States;

2.  Representing directly or indirectly, in any form or manner whatsoever, that any products or services offered for distribution or sale by Defendants are related to, affiliated with, approved by or sponsored by Plaintiffs or committing any other acts calculated to cause consumers to believe that Defendants' products and services or that Defendants' business is that of Plaintiffs' or somehow related to Plaintiffs, and from otherwise competing unfairly with Plaintiffs in any manner;

3.  Making any use of the TOYO Marks or confusingly similar variations thereof, alone or in combination with any other letters, words, letter strings, phrases or designs, in commerce or in connection with any business or for any purpose whatsoever (including, but not limited to, on websites, in domain names, in hidden text and metatags); and

4.  Registering or trafficking in any domain names containing the TOYO Marks or confusingly similar or dilutive variations thereof, alone or in combination with any other letters, words, letter strings, phrases or designs.

**IT IS FURTHER RECOMMENDED** that,

1.      Pursuant to 15 U.S.C. § 1125(d)(1)(C), HiChina Zhicheng Technology Ltd. (the domain name registrar) shall immediately transfer the registrations for the <www.toyamatyre.com> domain name to Plaintiffs; and

2.      Pursuant to 15 U.S.C. § 1125(d)(1)(C), VeriSign, Inc. (the .com and .net domain name registry) shall remove or disable the current domain name server information for the <www.toyamatyre.com> domain name registration.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED: July 30, 2014.

_____
NANCY J. KOPPE
United States Magistrate Judge

10